IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LELAND CORSO, JR.,              )
                                )
        Petitioner,              )
                                )
    v.                           )    1:22CV274
                                )
TODD ISHEE,                     )
                                )
        Respondent.              )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, filed a Petition [Doc. #2] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner does not challenge the convictions that led to his incarceration, but instead attacks prison disciplinary convictions which occurred on June 3, 2021, at Scotland Correctional Institution. Petitioner was convicted of one charge of threatening staff and one charge of disobeying a direct order, but a third charge of interfering with staff was dismissed due to insufficient evidence. (Petition at 1, 32.) The convictions resulted in sanctions that included totals of 30 days of restricted housing, 50 days of credit time loss, 80 hours of extra duty, 50 days of canteen and visitation suspension, 60 days of telephone suspension, and three months of limited canteen draw. (Id. at 29.) After Respondent filed a Motion for Summary Judgment [Doc. #15], Petitioner filed a Response [Doc. #21], and Respondent filed a Reply [Doc. #22]. Respondent's Motion is now before the Court.

Facts

The basic facts as claimed by the parties at Petitioner's disciplinary hearing are reflected in the disciplinary packet (Respondent's Brief [Doc. #16], Ex. 2) from that hearing unless otherwise noted and are as follows. According to Sergeant Anderson, on April 21, 2021 at 9:40 pm, he was called to Tan 2 F Pod based on a report that Petitioner was causing a disturbance, and he observed Petitioner not complying with staff orders. He ordered Petitioner to submit to handcuffs and Petitioner initially complied. However, after a cuff was placed on Petitioner's left hand, Petitioner turned with his right fist balled up toward another officer, causing Anderson to use pepper spray on Petitioner. Petitioner then allowed himself to be handcuffed and was taken to a medical area. Once there, he kicked over a scale and had to be resecured by staff. Other officers reported that after being initially handcuffed to be taken to the medical area, Petitioner was irate, tried to break free, and attempted to jump or throw himself down a set of stairs. Officers had to place him on a flat surface to regain control. He was then taken for decontamination and escorted to restricted housing.

According to Petitioner, he was told to submit to handcuffs and did so. However, the first cuff pinched his wrist and he flinched from the pain. Anderson then pepper sprayed him, he was cuffed, and the officers maintained control of him all the way to the medical area. Once there, he was forced onto a scale, but then asked if the handcuffs could be loosened. After being told no, he refused to be weighed. Officers then slammed him to the ground, knocking over the scale in the process. He reported noticing swelling and cuts on his left wrist and stated that he had scars from the incident. Officers present during the incident did not

2

report seeing any injuries to Petitioner's wrist. However, other officers or prison employees did see minor injuries to Petitioner's left wrist after the fact. (Petition at 37.)

The hearing officer attempted to view video camera footage of the events in question. However, the disciplinary decision states that footage from Tan Unit was unavailable for the incident due to recent upgrades in the camera system. There was also video of only the entrance and exit to the medical area, none of the inside of the area.

## Petitioner's Claims

Petitioner raises two potential grounds for relief in his Petition. He contends first that he requested video camera footage of the incident that led to his convictions, but that the hearing officer denied access to the footage "for the reason that it was unavailable due to recent upgrades to the cameras." (Petition at 6). Second, he claims that he was denied a fair and impartial factfinder during the disciplinary hearing and during his appeal of that hearing because there was insufficient evidence to support the claims had "proper weight been given to conflicting facts." (Petition at 8).

## Discussion

In evaluating Petitioner's claims, the Court first notes that most of the punishments for his disciplinary convictions--extra duty, suspension of privileges, and limitations on trust account draws--do not give rise to a federal habeas corpus claim. See, e.g., Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) ("Clearly, [a] thirty-day loss of commissary privileges and cell restriction do not implicate due process concerns."); Cobb v. Mendoza-Powers, No. EDCV 08-1920, 2010 WL 364453, at *5 (C.D. Cal. Jan. 25, 2010) ("[Since] the assessment of

3

40 hours of 'extra duty' prison work . . . did not implicate the fact or duration of Petitioner's sentence, Petitioner's claim concerning that punishment is not cognizable in a § 2254 habeas action"). Segregation can give rise to a habeas claim where it "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Bevarati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). However, Petitioner alleges no facts to support such a claim here. Instead, Petitioner's claim must rest on his loss of good time credits. Loss of such credits can support a claim for habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78-79 (2005). Nevertheless, a prisoner's rights during disciplinary hearing, and this the Court's review of claims based on such a hearing, are very limited. The Supreme Court has set out the minimum requirements for due process in prison disciplinary hearings where such an interest is implicated:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the

4

complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. Providing impartial fact finders.

Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). In addition, the factfinder's decision must find some support in the evidence. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454-55 (1985) "This standard is met if there [is] some evidence from which the conclusion of the administrative tribunal could be deduced." Id. (internal quotation omitted).

Petitioner's first claim is that he was denied a chance to present evidence, specifically Tan Unit camera footage, to support his contentions that staff used excessive force and injured his wrist. "[P]rison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in Wolff." Lennear v. Wilson, 937 F.3d 257, 269 (4th Cir. 2019). Therefore, "upon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" Id. (quoting Wolff, 418 U.S. at 566); see also id. at 270 (holding that "prison officials must consider . . . requests for video surveillance evidence[] on an individualized basis" (internal quotation marks omitted)). "[P]rison officials bear the burden to come forward with evidence of the reasons for denying an inmate's request for access to . . . video surveillance footage." Id. at 270.

In the present case, the record reflects that the hearing officer reviewed what camera footage existed, but also noted that no camera footage existed from Tan Unit 2 F Pod showing

5

the incident in question. Specifically, the report from the hearing officer only a few weeks after the incident notes that "numerous attempts have been made to review the video on the unit[;] however due to recent upgrades the video is not available for the date and time of the incident." (Resp. Br. Ex. 2 at 11.) Respondent further supports this with an affidavit (Resp. Br., Ex. 3) from the Warden at Scotland Correctional, Stephen Jacobs. Jacobs states that he directed that any video footage related to the incident leading to Petitioner's disciplinary conviction be obtained in relation to this litigation but that the videos obtained in that search did not show Tan Unit 2 F Pod, did not show Petitioner being secured against a flat surface, and did not include footage from inside the medical area. Instead, they only showed Respondent being escorted in handcuffs through another dormitory and several corridors.

Petitioner points to a grievance he filed concerning the alleged use of excessive force against him in which the answer to the grievance stated that it appeared from video footage that all prison polices were followed by staff. (Petition at 37.) However, this does not conflict with the above statements that some footage existed, but that footage from Tan Unit 2 F Pod was not part of that footage. Indeed, the substance of the response to the grievance relies on the officer's statements with regard to the encounter, and does not indicate or reflect the existence of video footage of the incident itself, and instead notes only that available footage had been reviewed. This is consistent with the hearing officer's statement that video of the Tan Unit was not available for the date and time of the incident, that the hearing officer did review video of the receiving area and the entrance and exit of the medical unit, that this video only showed Petitioner being escorted to a holding cell, and that the videos did not show any

6

of the encounter in the Tan Unit or the medical area. Thus, Respondent has established that no video of the incident existed, and Petitioner has presented no genuine dispute on this issue.

Petitioner responds to the absence of the footage from Tan Unit by stating that Respondent had a duty to make sure that all security cameras were operating or recording properly at the time of the incident. However, Petitioner points to no federal constitutional duty to ensure that security cameras in a prison are operational or even that they exist at all, and other cases have recognized that there is no due process violation where videos of an incident are not provided because they do not exist. See, e.g., Anderson v. FCC Coleman-USP II Warden, 649 Fed. App'x 730, 731 (11th Cir. 2016); McKoy v. Fox, 587 Fed. App'x 802, 804 (5th Cir. 2014). Indeed, the Fourth Circuit in Lennear noted that the petitioner would be entitled to disclosure of the video only "if the district court finds that Petitioner lodged a timely request for the evidence and that the evidence existed at the time of his request." Lennear, 937 F.3d at 279. In contrast, "if the district court determines that . . . the evidence did not exist, then no violation of Petitioner's procedural due process rights occurred." Id. Here, Respondent has established that no video existed in the Tan Unit or in the medical area for the date and time of the incident, and thus Petitioner has not shown that he was deprived of the chance to access and present relevant or helpful evidence that existed. Therefore, he cannot establish his first claim for relief and it should be denied.

Petitioner's second claim is that he was denied an impartial and fair factfinder during his hearing and appeal. He alleges that the officers at his disciplinary hearing and on appeal did not give proper weight to facts he presented that conflicted with officers' statements

7

regarding the events, particularly concerning the injuries to his wrists, did not provide him with requested video footage, and denied his appeal despite conflicting facts and statements. Respondent addressed this claim as an insufficiency of the evidence claim, but Petitioner makes clear in his Response that this is not his argument and that his claim is based only an allegation of partiality. (Response at 6.) Nevertheless, the claim fails either way.

First, as noted in Respondent's Response, there is clearly "some support in the evidence" for the determination here based on the affidavits and interviews of the officers, which provide at least "some evidence from which the conclusion of the administrative tribunal could be deduced." The disciplinary conviction for threatening to harm or injure a staff is supported by Sergeant Anderson's statement that as Petitioner was being handcuffed, Petitioner turned to Officer Thompson with his right hand balled up in a closed fist. (Resp. Br. Ex. 2 at 29-30.) Similarly with regard to the disciplinary conviction for refusing to obey a direct order, multiple officers' statements reflect that Petitioner refused to submit to handcuffs, continued to try to resist and break free, and then refused to follow a direction to be weighed, resulting in the medical scale being kicked over. (Resp. Br. Ex. 2 at 34, 35.) Even Petitioner's own statement admits that he refused to be weighed. (Resp. Br. Ex. 2 at 32.) This evidence provides a basis from which the conclusion of the hearing officer can be deduced.

Second, with respect to Petitioner's claim of partiality, "[a] prisoner is entitled to have disciplinary charges against him considered by an impartial tribunal, but the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally," Ali v. Buffaloe, 1:22CV159, 2023 WL 2602004, at *14 (M.D.N.C. Jan. 30,

8

2023) (internal quotations and citation omitted).  See Washington v. Harper, 494 U.S. 210, 234-35 (1990) (citing Wolff for the proposition that "prison officials [are] sufficiently impartial to conduct prison disciplinary hearings."); Wolff, 418 U.S. at 570-71.  To prevail on a claim of bias, a petitioner must present more than conclusory statements of impartiality.  See Ali, 2023 WL 2602004 at *14;  Lacy v Young, No. 5:20-CV-582, 2021 WL 6498833, *4 (S.D.W.V. Nov. 16, 2021).  Petitioner fails to do more than that here.  As discussed above, no video footage of the important parts of the incident existed, and there is no support for the claim that the hearing officer denied him access to evidence that existed.  In addition, any dispute regarding the existence of an injury to Petitioner's wrist was at best tangential to the main issue of whether Petitioner disobeyed and threatened officers.  The fact that Petitioner's wrist may have been injured at some point during the events that occurred did not somehow excuse his disciplinary violations if they occurred as the hearing officer concluded that they did.  At most any conflicting statements could have impacted officer credibility, but the hearing officer and officers handling Petitioner's appeal determined that the officers were credible despite the existence of any conflicts regarding the injury to Petitioner's wrist.  The fact that Petitioner lost his arguments does not show any unconstitutional bias, which means that his claim is conclusory and fails as such.  Respondent's Motion should be granted and the Petition should be denied.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #15] be granted, that the Petition [Doc. #2] be denied, that this action be dismissed, and that, there being no substantial issue for appeal concerning the denial of a

constitutional right affecting the convictions nor a debatable procedural ruling, a certificate of appealability not issue.

This, the 13th day of December, 2023.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge